315 So.2d 431

**In re Wayne LIGHTSEY and Debbie Lightsey**

**v.**

**KENSINGTON MORTGAGE AND FINANCE CORP., a corp., etc., et al.**

**Ex parte KENSINGTON MORTGAGE AND FINANCE CORPORATION, a corp., etc.**

**SC 1101.**

Supreme Court of Alabama.

June 19, 1975.

Rehearing Denied July 31, 1975.

Lee Bains, Bessemer, for petitioner.

Norman K. Brown, Bessemer, for appellees.

MERRILL, Justice.

This is a petition for writ of certiorari to the Tenth Judicial Circuit Court to re-

view a decree which held petitioner, Kensington Mortgage and Finance Corporation, in contempt for violating the terms of a preliminary injunction.

This contempt proceeding is collateral to the main case in which the Lightseys, plaintiffs, had purchased a mobile home on the installment plan and they sued the manufacturer, the retailer, Kensington Mortgage and Finance Corporation (hereinafter referred to as Kensington) and others for damages for defects in the mobile home.

On September 18, 1974, plaintiffs moved for a preliminary injunction to enjoin Kensington from foreclosing or collecting further payments on the mobile home until the suit was settled. At the hearing on October 3, the trial court granted plaintiffs' motion, and required the plaintiffs to pay the monthly payments to the clerk of the circuit court and ordered the clerk to deposit the payments in a bank at interest. The preliminary injunction was actually issued on October 9, but Kensington's counsel was present and participated in the hearing on October 3.

The injunction, issued October 9, 1974, provided in part as follows:

"* * * Defendant, Kensington Mortgage and Finance Corporation, be and the said Defendant is hereby enjoined from collecting further payments from Plaintiffs, and is restrained and enjoined from initiating foreclosure proceedings against Plaintiffs or the mobile home units as described in the complaint, or the real estate described in deed attached to said Defendant's recorded financing statement (UCC–1) as recorded in the office of the Judge of Probate of Bibb County, Alabama.

"It is further ordered, that commencing with the payment due in the month of October, 1974, Plaintiffs shall make said payments to J. B. Vines, as Deputy Clerk and Register of this Court, and shall continue to make said payments to said Register on or before the 1st day of each month, and not later than the 10th day of each month thereafter, pending final judgment in this cause. The said J. B. Vines is hereby authorized and directed to deposit said payments in a local financial institution at the highest prevailing daily interest rate."

The trial judge did not require the plaintiffs to post bond as security for the issuance of the preliminary injunction.

On October 17, 21 and 23, plaintiffs received threatening collection letters from Kensington, even though the regular installment payment had been paid to the clerk on October 10 and the account was not delinquent when any of the Kensington letters were written. On October 23 and October 25, counsel for plaintiffs wrote counsel for Kensington (both practice in Bessemer) requesting that Kensington be notified that the account was not delinquent and to comply with the court's order. (We note that the record shows that Kensington's counsel in Bessemer advised Kensington promptly as to all events that had transpired.) Kensington wrote another letter on November 6 or 7 to the plaintiffs "to discuss repossession of your mobile home."

Plaintiffs filed a motion to punish Kensington for contempt on November 13, and asked for damages in the amount of $50,000.00, and the matter was set for hearing on November 22.

Counsel for Kensington explained to the court that the continued attempts to collect, in violation of the injunction, were due to computer malfunctions, assured the court there would be no more violations, stated that some people in Kensington's organization had been discharged as a result of the error, and that a telegram of apology was being sent to plaintiffs and their counsel. These telegrams were dated November 21 and received November 22.

On November 25, plaintiffs received a series of demand cards from Kensington.

Since the court had not ruled on the motion for contempt, plaintiffs moved that they be allowed to present additional evidence in support of their motion for con· tempt. This· hearing was set for December 2.

Both sides presented evidence and argument and the cause was taken under advisement. On December 4, the court entered a "Judgment of Civil Contempt" against Kensington, assessing a fine against it for $20,000.00, directed to be paid to plaintiffs, and no opportunity was provided for Kensington to purge itself of the contempt.

On December 16, the trial court granted a stay of the fine pending a review in this court.

Kensington's first contention is that the trial court erred in issuing the preliminary injunction without requiring a bond. ARCP 65(c) requires a bond. We agree that the trial court erred in not requiring the appellee (applicant for the injunction) to file the required security.

In *Board of Water & Sewer Com'rs v. Merriwether Const. Co.*, 276 Ala. 650, 165 So.2d 739, this court said:

"Assignment of error 7 charges that the court erred in granting an injunction against appellants without requiring appellee to give bond. Title 7, §§ 1041 and 1042, Code 1940, require bonds to be given before the issuance of injunctions in specific situations, and Tit. 7, § 1043, applicable here, provides that 'in other cases' the party seeking the injunction must give bond. Our cases hold that it is reversible error to issue a temporary restraining order or a temporary injunction without requiring complainant to give a bond as required by the statutes. Persons v. Summers, 274 Ala. 673, 151 So.2d 210; Loop National Bank of Mobile v. Cox, 255 Ala. 388, 51 So.2d 534; Morris v. Sartain, 224 Ala. 318, 140 So. 373; Ex parte Miller, 129 Ala. 130, 30 So. 611."

In *Ex parte Miller*, supra, the court said:

"In this state it is provided that injunctions can be issued alone, upon the execution of bonds, such as are prescribed by the statute. Section 786 of the Code provides, that no injunction must issue to stay proceedings after judgment in a personal action until the party applying for it gives bond and security, as prescribed. Section 787 directs, that no injunction must issue to stay proceedings at law for the recovery of land, unless the party give bond and security as provided; and section 788 requires, that in other cases,—than those specified above,—the party must give bond with surety in such sum as the officer granting the injunction directs, payable and conditioned as prescribed. These sections cover any and every case that may arise for an injunction. To issue one without the bond prescribed, would be irregular. *Thorington v. Gould*, 59 Ala. 461. Whatever might be the rule, in the absence of statutory regulations on the subject, as to the time the writ becomes operative, we apprehend, under our statute, it can never be operative, until the injunction bond has been executed. *Such an order is conditional in its nature, and there can be no injunction, and consequently no contempt for its violation, until the bond has been given.* 2 High, Inj., § 1429; 1 Beach on Inj., § 269; *Winslow v. Nayson*, 113 Mass. 411." (Emphasis Supplied.)

Rule 65(c), ARCP, provides in pertinent part:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorneys fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; * * *."

We note that §§ 1043, 1053, 1056 and 1059 of Tit. 7, are among the sections of the Code superseded by ARCP 65.

We adopted our ARCP in 1973 and they became effective July 3, 1973. This is our first opportunity to write on Rule 65(c). As stated in *Chatz v. Freeman* (C.A. 7th, 1953), 204 F.2d 764, " * * * a temporary restraining order should not issue without compliance with rule 65(c). To us, the rule seems plain, definite and unmistakable. There is nothing ambiguous about it. We conclude that the trial court committed error in issuing the temporary restraining order without providing for security as required by rule 65(c) of the Federal Rules of Civil Procedure. The judgment appealed from is reversed, and the cause is remanded." See also, *Telex Corp. v. International Business Machines Corp.* (C.A. 8th, 1972), 464 F.2d 1025.

■ We are aware that there are necessary exceptions to such an absolute holding in all cases under Rule 65(c), such as requiring only a nominal security, or where the litigant is impecunious or the issue is one of overriding public concern. Wright & Miller, Federal Practice and Procedure, Civil, § 2954, p. 529.

Still, the rule requires "the giving of security by the applicant" for a "restraining order or a temporary injunction" and our courts ought to either follow the rule or show why it should be changed.

■ We hold that before an injunction or restraining order is issued under ARCP 65, the giving of security by the applicant for the payment of costs, damages and reasonable attorneys fees as provided in Rule 65(c) is mandatory, unless the trial court makes a specific finding based upon competent evidence that one or more of the exceptions, stating them, do exist. See *Hutchins v. Thrombley*, 95 Idaho 360, 509 P.2d 579. There was no such finding in the instant case and no suggestion by the trial court in its orders that an exception did exist. It follows that the judgment of

contempt must be reversed, because "there can be no injunction, and consequently no contempt for its violation, until the bond has been given." *Ex parte Miller*, 129 Ala. 130, 30 So. 611. See also, Annotation 12 A.L.R.2d 1093, § 21.

This disposes of this case in this court, but in view of the fact that more proceedings may be had, we address ourselves to two other questions which arose in this case and which could arise in future proceedings, if any.

■ The first question is whether the contempt in this case was criminal or civil. The trial court treated it as a civil contempt and we think correctly so, although it partakes of the characteristics of both.

One of the most quoted cases on this subject is *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, where it was said:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 1002. But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the de-

fendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.

"For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless there were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial, and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in Re Nevitt, 54 C.C.A. 622, 117 F. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.

"It is true that either form of imprisonment has also an incidental effect. For if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the imprisonment is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change imprisonment which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa.*"

The subject was treated by this court in *Ex parte Griffith*, 278 Ala. 344, 178 So.2d 169, where it was said:

"Our cases make clear the distinction between a criminal contempt and a civil contempt. Our cases hold that statutory limitations on punishment for contempt (Sections 9, 126, and 143 of Title 13, Code of 1940) apply only to criminal contempt, and not to civil contempt. Ex parte King, 263 Ala. 487, 83 So.2d 241; Ex parte Dickens, 162 Ala. 272, 50 So. 218.

"In Ex parte Dickens, 162 Ala. 272, 50 So. 220, it is stated:

'A "civil contempt" consists in failing to do something, ordered to be done by a court in a civil action, for the benefit of the opposing party therein.'

"In Ex parte Hill, 229 Ala. 501, 158 So. 531, this court wrote:

'It is also said that the limitations provided by statute were not intended to restrict the power of the court to enforce its orders and decrees. That right is called a proceeding to declare a civil contempt. A criminal contempt is one in

which the purpose of the proceeding is to impose punishment for disobedience to the orders of the court. A civil contempt invokes the power of the court to commit one who is continuing to violate its orders until he complies with them. This court had held that the statutory limitations do not apply to civil contempts as thus defined. Ex parte Dickens, supra; Ex parte Stickney, 40 Ala. 160.'

"As stated in 17 Am.Jur.2d Contempt, Section 4:

'A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court; private parties have little, if any, interest in the proceedings for punishment. Conversely, if the contempt consists in the refusal of a person to do an act that the court has ordered him to do for the benefit or advantage of a party to a suit or action pending before the court, and the contemnor is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court; the party in whose favor that judgment was rendered is the real party in interest in the proceedings. Civil contempt proceedings look only to the future. And it is said that in civil contempt proceedings, the contemnor must be in a position to purge himself.' "

We affirm these statements.

■ The second question is whether Alabama permits compensatory fines in favor of the adverse party in contempt proceedings. The trial court did award the fine of $20,000.00 to the plaintiffs in the instant case.

The federal courts allow indemnity or compensatory fines in both criminal and civil contempt cases. The states fall into three general categories: (1) those which have statutes that specifically authorize compensatory fines for civil contempt; (2) those whose statutes are silent as to com-

pensatory fines and that silence is interpreted as a prohibition of such power; and (3) those whose statutes are silent, but hold that in the absence of a statutory prohibition, the power to assess compensatory fines is inherent in the court whose decree has been violated. See 17 C.J.S. Contempt § 94, for discussion and citations.

This court has consistently applied a rather strict construction to contempt cases.

We are inclined to adopt the reasoning and result reached by the Supreme Court of California in *H. J. Heinz Co. v. Superior Court*, 42 Cal.2d 164, 266 P.2d 5 (1954), when the question of compensatory fines was presented. The court noted the two different positions where the statutes were silent, and noted and cited cases from Idaho and Montana which held that "their statutory provisions precluded the courts from imposing compensatory damages for contempt" and the court concluded:

"To allow compensatory damages in the contempt proceeding would have the effect of turning it into an action for damages. In an action for damages, the parties are ordinarily entitled to a trial by jury and an appeal, neither of which has been accorded the petitioner in this proceeding."

In *Beverly v. Roberts*, 215 S.W. 975, the Court of Civil Appeals of Texas, after noting what other courts had done, cited a prior Texas case and said: "It was held in such case that the prosecution for contempt did not warrant a civil judgment in redress of injuries resulting from the acts which constituted the alleged contempt, and that such remedy could only be obtained in a civil suit."

In *Ex parte Textile Workers Union of America*, 264 Ala. 656, 89 So.2d 92, the fine was ordered "to be paid to the Register for the use and benefit of Madison County" when the violation was of a temporary restraining order issued by the then chief justice of this court. We know of

no statute or decision of this court that has ever authorized a circuit court to impose a fine as indemnity or as compensatory damages to the adverse party in a civil action. We think the question of the amount of unliquidated damages should be regularly tried so that a dissatisfied party could have an initial review by an appeal rather than by a writ of certiorari. An indemnity or a compensatory award of damages must be determined in an ancillary proceeding and is not permissible as an integral part of the court's adjudication of contempt in the circuit courts of this state.

Having held that Rule 65(c) requires "the giving of security by the applicant" and that this is mandatory unless specifically excepted by the court in its order granting a restraining order or a preliminary injunction, we hold that the injunction was not proper and, therefore, there was no contempt.

We are not to be understood as impinging, in this opinion, on the holding in *Fields v. City of Fairfield*, 273 Ala. 588, 143 So.2d 177, and that of *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, that violations of an order of a court are punishable as criminal contempt even though the order is set aside on appeal. In both of those cases, it was not contended that any procedural requirements were omitted, while here, the proceeding shows on its face that there was no compliance with Rule 65(c).

Nor are we to be understood as holding that where there is a violation of a valid restraining order and such violation proximately results in damages to the aggrieved party, such injured party is without a remedy.

Unlike the court in Texas, we do not see the necessity of requiring the aggrieved party in such an instance to pursue his remedy in another suit; but, like the California court, we believe either party on demand would be entitled to a jury trial on the issue of damages. We perceive of no reason why this cannot be afforded in the same proceeding on petition of the aggrieved party seeking damages after a finding by the trial court that the opposite party is in contempt. A jury would be impaneled to hear the evidence on such petition and determine whether damages, compensatory or punitive, should, under the usual rules, be imposed.

Reversed and remanded.

All the Justices concur.