Russell C. Chestang, Jr. (the "nephew"), appeals from a circuit judge's order holding him in contempt of court for violating an injunction prohibiting him from interfering with the enjoyment of an easement and ordering him to pay approximately $25,000 in damages and attorney fees to Edgar Frank Chestang (the "uncle"). We affirm.
 Facts and Procedural History
Russell C. Chestang, Sr., granted an easement over his property in Mobile County for the benefit of his brother, Edgar Frank Chestang. After Russell Chestang granted him an easement, Edgar Frank Chestang hired a surveyor and contractors to survey the easement and to build a road across it. The easement allowed easier access than was otherwise available from public roadways, to property that Edgar Frank Chestang owned and from which he removed timber and dirt for sale.
On August 19, 1998, Russell C. Chestang, Sr., died. After his death, his son, Russell C. Chestang, Jr., and others began interfering with the uncle's use of the *Page 296 
easement. The uncle filed a verified complaint for injunctive relief, and the trial court issued a temporary restraining order on September 2, 1998, enjoining the nephew from interfering with his uncle's use of the easement.
The trial judge conducted an ore tenus hearing on September 9, 1998. On September 14, 1998, the judge entered an injunctive order in which he found the easement valid. He also wrote:
 "12. The Court further finds, from the testimony and evidence, that the [nephew and others] have forcibly prevented [the uncle] or his contracted drivers from using the easement from August 24, 1998, until September 2, 1998, when the Temporary Restraining Order was issued by this Court. The Court further finds, from the testimony and evidence presented in this matter, that the [uncle's] business relationships to whom he supplies dirt will not continue to do business with [him] if [he] is unable to deliver such dirt across the easement . . . as it is apparently a shortcut allowing the hauling of more dirt within a day's time than is otherwise possible.
". . . .
 "Therefore, the [nephew and other defendants], and each and every one of them or anyone acting in concert with them directly or indirectly, are [enjoined] from actively interfering in any way with the [uncle's] use of the easement in question or in any manner preventing or interfering in any other way with the [uncle's] use of his easement."
(C.R. at 25-26.)
The nephew attempted to appeal the injunction, but the Court of Civil Appeals, on December 8, 1998, dismissed his appeal, apparently as untimely. Chestang v. Chestang (No. 2980210), 771 So.2d 521
(Ala.Civ.App. 1998) (table). During the pendency of that appeal, the nephew continued to interfere with the uncle's use of the easement. The uncle moved the trial court to hold the nephew in contempt. The trial judge held an ore tenus hearing on the uncle's motion on March 9, 1999, and on March 30, 1999, entered the following order:
ORDER
 "This matter comes before the Court on [the uncle's] Motion to Show Cause as to why the [nephew] should not be held in . . . contempt of the Order of this Court of September 14, 1998.
 "All parties were present in court and also represented by counsel at the Show Cause hearing held on March 9, 1999. . . .
 "The testimony of [several witnesses] demonstrated a repeated pattern of harassment to the [uncle] and his agents over the use of the road which is the subject of the Order of September 14, 1998. It is obvious that the padlocks on the gates [gates allowing access to the roadway across the easement] were sabotaged by the [nephew]. It is also obvious that the [nephew] intended to make it extremely difficult for the [uncle's] dirt haulers to use the road. Testimony demonstrated that the [uncle] has lost some $23,000 as a result of the [nephew's] violation of this Court's order.
 "While the [nephew] is the obvious prime suspect in the vandalism of the equipment owned by [the uncle's contractor],[1] without more evidence that the [nephew] was responsible, the Court will *Page 297 
not impose sanctions against the Defendant.
 "The counsel of record for the Plaintiff has filed an affidavit setting out his attorney's fees incurred in connection with this contempt action. The Court finds these fees to be reasonable.
 "Therefore, it is ORDERED, ADJUDGED AND DECREED, that the [nephew] is hereby found in contempt of this Court's Order of September 14, 1998 and that a Judgment is hereby entered for the [uncle] and against the [nephew] for the sum of TWENTY-FIVE THOUSAND SIX HUNDRED SEVENTY DOLLARS AND NO CENTS ($25,670.00).
 "Any further violations of this Court's Orders will result in the [nephew's] being JAILED.
"Done and Ordered this 30th day of March 1999.
"/s/ Joseph S. Johnston
"JOSEPH S. JOHNSTON
"Circuit Judge"
The nephew moved for a "reconsideration," which the trial court denied. This appeal followed.
 Discussion
The nephew argues that the trial judge's order makes an adjudication of criminal contempt, rather than civil contempt, and that the provisions of § 12-11-30(5), Ala. Code 1975, therefore limit the amount of damages the trial judge could impose. That Code section provides:
 "(5) Contempts. — The circuit court may punish contempts by fines not exceeding one hundred dollars ($100) and by imprisonment not exceeding five days. The power of the circuit court to enforce its orders and judgments by determinations of civil contempt shall be unaffected by this section."
(Emphasis added.) Because we take note of the sentence emphasized in this quotation of the Code section, and because we conclude that the order of March 30, 1999, made an adjudication of civil contempt, rather than criminal contempt, we reject the nephew's argument.[2]
In 1994, this Court adopted Rule 70A, Ala.R.Civ.P., defining "civil contempt" and "criminal contempt" as applied in "contempt proceedings arising out of civil actions." That rule defines civil contempt as the "willful, continuing failure or refusal . . . to comply with a court's lawful . . . order . . . that by its nature is still capable of being complied with." Rule 70A(a) (2)(D), Ala.R.Civ.P.
In his March 30, 1999, order, the trial judge found that the nephew had "intended to make it extremely difficult for the [uncle's] dirt haulers to use the road" and that the nephew had engaged in "a repeated pattern of harassment [of] the [uncle] and his agents." Thus, the trial court found that the nephew had willfully failed to comply with the September 14, 1998, injunctive order and had continued in that willful failure. In addition, the September 14, 1998, order was one that, "by its nature [was] still capable of being complied with," because it enjoined the nephew from interfering with the uncle's use of the easement from that date forward. Thus, the nephew's actions came within the definition of "civil contempt" in Rule 70A.
The order of March 30, 1999, was clearly not an adjudication of criminal contempt. Rule 70A(a)(2)(C) defines two categories of "criminal contempt." One of those categories is clearly not applicable to this case.[3] The other category of "criminal contempt" is defined as: *Page 298 
 "Willful disobedience or resistance of any person to a court's lawful . . . order . . . where the dominant purpose of the finding of contempt is to punish the contemnor."
Rule 70A(a)(2)(C)(ii), Ala.R.Civ.P. (Emphasis added.) A key element of this category of "criminal contempt" is that the contempt order is designed to punish. Further, the Code section cited by the nephew, § 12-11-30(5), speaks of a court's "punish[ing]" a criminal contempt by imposing fines and by imprisoning the contemnor. In this present case, the contempt order does not impose a term of imprisonment. Further, the trial court's order clearly indicates (by its reference to the testimony about the financial loss the uncle had suffered) that the money it ordered the nephew to pay was in the nature of compensatory damages rather than in the nature of a punitive fine.
The nephew argues that "civil contempt proceedings look only to the future" and that this case, therefore, must present an instance of criminal contempt, because the behavior made the subject of the nephew's liability had already occurred. This argument is without merit. InLightsey v. Kensington Mortgage Finance Corp., 294 Ala. 281, 287,315 So.2d 431, 436 (1975), Justice Merrill addressed the question "whether Alabama permits compensatory fines[4] in favor of the adverse party in contempt proceedings." In that case, after discussing the law of other states, this Court explicitly recognized that such an award may be made. See also Moody v. State ex rel. Payne, 355 So.2d 1116 (Ala. 1978); and Town of Leighton v. Johnson, 540 So.2d 71 (Ala.Civ.App. 1989). Such an award, by its very nature, must be predicated on past action that has caused injury to the party moving for a finding of contempt of court. Therefore, the fact that the compensatory award in the trial judge's March 30, 1999, order is based on the nephew's past actions does not require the conclusion that the order was an adjudication of criminal contempt.
The nephew argues that the trial judge's award of attorney fees should be reversed, because, he says, an award of attorney fees is not allowed in a case of criminal contempt. As stated above, however, this is a case of civil contempt, and attorney fees may be awarded in such a case.Moody v. State ex rel. Payne, 355 So.2d at 1119. The nephew's argument on this point, therefore, is without merit.
The nephew's final argument is that the amount of the trial judge's award of damages was not supported by the evidence. We disagree. The evidence was conflicting as to the amount of damage the uncle had incurred. "Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's findings on issues of fact; its judgment based on those findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Hart v. Jackson,607 So.2d 161, 162 (Ala. 1992).
The uncle's contractor, James Edward Taylor, testified in part as follows concerning the income lost as a result of the nephew's actions:
 "Q. So we're looking at somewhere between eighteen and — I'm sorry, approximately twenty-three thousand dollars?
"A. Yes, sir."
(R.T. at 57.) Mr. Taylor also testified that he estimated the uncle's revenue loss at *Page 299 
approximately $5,000 per week. Mr. Taylor and others testified that the accumulated work stoppages amounted to four or four and one-half weeks. Therefore, we cannot conclude that the trial court's judgment was "clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Hart v. Jackson, supra.
In light of the broad discretion trial judges have to enforce their own orders, see Jones v. City of Opelika, 242 Ala. 24, 4 So.2d 509 (1941), and given the ore tenus standard of review, we affirm the judgment.
AFFIRMED.
Hooper, C.J., and Cook, Lyons, and Johnstone, JJ., concur.
[1] The transcript of the show-cause hearing includes the following testimony from James Edward Taylor, the uncle's contractor:
 "Q. Have you had problems with that equipment on that dirt pit?
 "A. We've had some problems with vandalism to it. We've had a service truck that was — taking the fire extinguisher out and it was shot inside, you know, the service truck. We had some wires pulled off of some off-the-road trucks. We've had some nails and screws and rocks put into fuel tanks. We've had, what I feel like, an excessive amount of flats. We've had a lot of stuff that costs us a good bit of money to correct. Yes, sir."
(R.T. at 50.)
[2] The nephew does not challenge the trial judge's finding that he had violated the September 14, 1998, order. He does not argue that the evidence was insufficient to support the finding that he was, in fact, in contempt. Therefore, the key question is whether it was civil contempt or criminal contempt.
[3] That category is defined as:
 "Misconduct of any person that obstructs the administration of justice and that is committed either in the court's presence or so near thereto as to interrupt, disturb, or hinder its proceedings. . . ."
Rule 70A(a)(2)(C)(i), Ala.R.Civ.P.
[4] The use of the word "fine" contributes somewhat to the confusion about the distinction between civil and criminal contempt. However, as Justice Merrill discussed in Lightsey, 294 Ala. at 285,315 So.2d at 436, quoting from Gompers v. Bucks Stove Range Co., 221 U.S. 418
(1911), the distinction is not always clear. See also State v. Thomas,550 So.2d 1067, 1073 (Ala. 1989). This present case, however, clearly presents an adjudication of civil contempt.