THOMPSON, Presiding Judge,
concurring in part and dissenting in part.
I dissent to that portion of the main opinion finding probable merit to the contention that Jerry W. Kent (“the father”) raised in his motion to alter, amend, or vacate the judgment that the trial court *1086 erred in awarding an attorney fee to Heather Herchenhan (“the mother”). Whether there is probable merit to that issue first turns on a determination of whether the trial court found the father to be in civil contempt or in criminal contempt.
The main opinion concludes that, because the trial court sentenced the father to a jail term “in accordance with the limits of the criminal-contempt statute” and because it appears that the trial court intended to punish the father for his noncompliance with the then existing visitation order, “the contempt finding was in the nature of a criminal-contempt finding.” 215 So.3d at 1084. I disagree. A trial court’s decision to sentence a contemnor to serve time in jail for a period allowed pursuant to the criminal contempt statute, § 12-11-30(5), Ala.Code 1975, is not the determinative factor in deciding whether a finding of contempt is criminal or civil in nature, as the main opinion suggests.
In Pate v. Guy, 934 So.2d 1070, 1072 (Ala.Civ.App.2005), this court discussed the difference between civil contempt and criminal contempt, writing:
“In general, civil contempt seeks to compel compliance with a trial court’s judgment or order, while criminal contempt imposes punishment for failure to obey a judgment or order of the court. Rule 70A, Ala. R. Civ. P.; see also State v. Thomas, 550 So.2d 1067, 1072 (Ala.1989). An essential element of a finding of criminal contempt is that such a finding is intended to punish the contemnor, while a finding of civil contempt seeks to compel future compliance with court orders. See generally Chestang v. Chestang, 769 So.2d 294 (Ala.2000). Sanctions for criminal contempt are limited by statute to a maximum fine of $100 and imprisonment not to exceed five days. See Ala.Code 1975, § 12-11-30(5). On the other hand, sanctions for civil contempt may exceed those limits and may continue indefinitely until the contemnor performs as ordered.
“... In Chestang v. Chestang, supra, our Supreme Court reviewed the provisions of Rule 70(A), Ala. R. Civ. P., the rule that governs contempt in civil cases. The Supreme Court noted that Rule 70A(a)(2)(C) defines two types of criminal contempt: (1) misconduct that obstructs the administration of justice and (2) willful disobedience or resistance to a court order or judgment ‘ “where the dominant purpose of the finding of contempt is to punish the contemnor.”’ Chestang, 769 So.2d at 297-98. Concluding that the trial court’s judgment in Chestang was not designed to punish the contemnor but that it was instead designed to compel compliance on the part of the contemnor, our Supreme Court affirmed the award of an attorney fee in that contempt case.”
This court has also recognized that a finding of contempt can be both civil and criminal in nature. See, e.g., Norland v. Tanner, 563 So.2d 1055, 1058 (Ala.Civ.App. 1990); Parker v. Parker, 640 So.2d 979, 981 (Ala.Civ.App.1994). “There is no legal prohibition against the finding of both criminal and civil contempt in an appropriate factual setting. Wilson v. Freeman, 402 So.2d 1004 (Ala.Civ.App.1981).” Tanner, 563 So.2d at 1058.
“In United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the United States Supreme Court held:
“ ‘Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures. Disposing of both aspects of the con *1087 tempt in a single proceeding would seem at least a convenient practice.’
“330 U.S. at 298-99, 67 S.Ct. 677. (Footnotes omitted.).”
Fludd v. Gibbs, 817 So.2d 711, 714 (Ala. Civ.App.2001).
Furthermore,
“ ‘[t]he question of whether [an action involves] civil contempt or criminal contempt becomes important ... because a contemnor must be in a position to purge himself from the contempt. Mims v. Mims, 472 So.2d 1063 (Ala.Civ. App.1985). In order to purge himself in a criminal contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both. Kalupa v. Kalupa, 527 So.2d 1313 (Ala.Civ.App.1988). In order to purge himself in a civil contempt case, the contemnor must comply with the court’s order. Rule 33.4(b), A[la]. R.Crim. P.’ ”
Davenport v. Hood, 814 So.2d 268, 272-73 (Ala.Civ.App.2000) (quoting Hill v. Hill, 637 So.2d 1368, 1370 (Ala.Civ.App.1994)).
In Pate, supra, the record indicated that the mother in that case “had consistently stymied earlier court efforts to institute reasonable paternal visitation with the parties’ children” and had failed to follow pendente lite visitation instructions. 934 So.2d at 1072. The mother also failed to comply with a supervised-visitation schedule. This court stated: “In an attempt to impress upon the mother the importance of following the visitation provisions in the divorce judgment, the trial court found the mother in contempt and sentenced her to 24 hours in jail. This is the very essence of criminal contempt.” Id.
On the other hand, in Hudson v. Hudson, 494 So.2d 664 (Ala.Civ.App.1986), the trial court in that case found Rebecca Ann Hudson (“Rebecca”) in civil contempt for failing to obey the visitation requirements in the parties’ divorce judgment. For Rebecca’s civil contempt, the trial court sentenced her to jail “‘every weekend until the Court is satisfied that she has purged herself of contempt.’” Id. at 665.[2] The judgment further stated:
“‘Execution of the sentence for civil contempt is suspended to allow [Rebecca] to comply with the Court orders regarding visitation.... In the event the Court is not satisfied that [Rebecca] appreciates the significance of the civil contempt citations, the Court reserves the right to execute said sentence by ordering [Rebecca] to jail until such time as the Court is satisfied that its orders are being obeyed and [Rebecca] has purged herself of the civil contempt.’”
Id. at 667. This court noted that the language the trial court used in the judgment indicated that the sentence the trial court imposed for civil contempt “was not to punish [Rebecca], but to coerce her to obey the visitation and other requirements of the parties’ divorce decree.” Id.
Similarly, in Parker, supra, the trial court in that case found Joyce Faye Parker (“Joyce”) in “ ‘criminal contempt’ ” for removing certain items that, pursuant to the parties’ divorce judgment, “ Vent with the house’ ” and were to be sold to pay the parties’ debts. 640 So.2d at 980. Joyce sold the items herself and retained the proceeds for her own use. In the contempt judgment, the trial court ordered Joyce confined to the county jail for five days. However, the trial court continued, Joyce “ ‘may purge herself of this criminal contempt if within 60 days of the date of the filing of this Order said items are *1088 returned and installed to the marital home, ... [or] [Joyce] may substitute new items.’ ” Id.
This court found that the trial court’s order directing Joyce to pay an attorney fee to her former husband was not error, explaining:
“Although the trial court’s order contains the term ‘criminal contempt,’ the distinction between criminal and civil contempt has been determined. The purpose of a finding of criminal contempt is to punish the- contemnor for disobeying an order of the court; a finding of civil contempt seeks to coerce compliance'with an order of the court. Norland v. Tanner, 563 So.2d 1055 (Ala. Civ.App.1990).
“The ‘purge clause’ allowed [Joyce] control of her incarceration; therefore, no absolute sentence was imposed. While the trial court may have intended to punish [Joyce] for defiance of the original judgment of divorce, it clearly sought compliance with the January 15 [contempt] order. We conclude that the finding of contempt was civil in nature, although it had characteristics of both criminal and civil contempt. Lightsey v. Kensington Mortgage & Finance Corp., 294 Ala. 281, 315 So.2d 431 (1975). Consequently, the award-of an attorney fee was not in error.”
Id. at 981.
In the instant case, the trial court did not specify in its judgment the type of contempt in which it found the father. The judgment stated:
“[T]he father is in contempt of court for his interference with the court’s order allowing supervised visitation for the mother with the minor child. The court finds that the father interfered with the mother’s visitation on 24 occasions and is sentenced to jail for 5 days for each occasion the father interfered with the mother’s visitation for a total of 120 days in the Morgan County Jail. The 120 days in the Morgan County Jail are suspended and the father is placed on probation for 24 months. The father must not interfere with the visitation of the mother with the minor child during that 24 months of probation.”
Like the judgment in Parker, the judgment in the instant case does not impose an “absolute sentence” on the father. Instead, the trial court’s decision to suspend the jail sentence and place the father on “probation,” with' instructions that he not interfere with the mother’s visitation during the probation: period, demonstrates an intention to coerce the father into complying with the visitation order. Additionally, the father in this case can avoid serving a jail sentence by complying with the trial court’s visitation order in the future, i.e., he can purge himself of contempt by complying with the trial court’s order, not by actually serving time. Thus, based on the authorities discussed above, I conclude that the nature of the contempt finding is civil in nature, not criminal. As this court held in Parker, an award of an attorney fee is not erroneous when it is made in connection with a finding of contempt that is civil in nature. 640 So.2d at 981; see also Norland, 563 So.2d at 1058 (affirming an award of an attorney fee when, in making a finding of contempt, the trial court was attempting to compel compliance with its orders in addition to punishing the con-temnor for past disobedience).
Furthermore, in addition to having the authority to award the mother an attorney fee based on its determination that the father was in civil contempt, the trial court also had the discretion to award the mother an attorney fee because the matter before the trial court involved domestic-relations issues.
*1089 “ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala. Civ.App.1986).’
“Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).”
Martin v. Martin, 85 So.3d 414, 423 (Ala.Civ.App.2011).
In his motion to alter, amend, or vacate the judgment, the father asserted that the trial court’s award of an attorney fee to the mother “is manifestly unjust, against the great weight of the evidence and constitutes an abuse of discretion. Attorney fees cannot be awarded in an action where criminal contempt has been adjudicated.” In his brief on appeal, the father’s only basis for arguing that the award of an attorney fee was made in error was his assertion that “imposition of attorney fees in this criminal contempt action” is improper. Thus, the only ground the father has asserted in this court for challenging the award of an attorney fee is based on what I believe is the mistaken premise that the trial court found him in criminal contempt. Any argument that the father could have made on appeal challenging the award of an attorney fee on any other ground is deemed waived. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (“[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.”); see also Palmer v. Palmer, 192 So.3d 12 (Ala.Civ.App.2015) (same).
For the reasons set forth above, I believe there is no probable merit to the father’s contention that the trial court erred in awarding the mother an attorney fee, and I do not believe that, as to this issue, the trial court’s failure to hold a hearing on the father’s postjudgment motion “injuriously affected substantial rights” of the father. Rule 45, Ala. R.App. P.; see also Chism v. Jefferson Cty., 954 So.2d 1058, 1086 (Ala.2006).
I would not reverse the judgment of the trial court based on the attorney-fee issue. Therefore, I respectfully dissent from the main opinion insofar as it reverses the judgment on that ground, and I would address the father’s other contentions on appeal.
I concur with those portions of the main opinion concluding that the trial court had jurisdiction to consider this matter and reversing the trial court’s judgment insofar as it determined the amount of the mother’s child-support arrearage.
THOMAS, J., concurs.

. Rebecca was also found in criminal contempt for disobeying a number of provisions of the divorce judgment, including the visitation provision. The trial court sentenced Rebecca to 120 hours in the county jail on weekends for criminal contempt. Id. at 666.