Rel: May 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

## CL-2023-0469

_____

## Patricia Moore

### v.

## Michael Barton

## Appeal from Marshall Circuit Court
## (DR-20-47.02)

HANSON, Judge.

Patricia Moore ("the mother") appeals from a judgment entered by the Marshall Circuit Court ("the trial court") finding her in contempt, among other things. We affirm the judgment in part, reverse the judgment in part, and remand.

The mother, who resides in Marshall County, and Michael Barton ("the father"), who resides in London, England, engaged in a relationship which produced two children -- a daughter, who enjoys acting, and a son, who is autistic. When the parties' relationship ended, the mother initiated a paternity, custody, and support action against the father. On February 9, 2021, the trial court entered a final judgment ("the 2021 judgment") that, in pertinent part, adjudicated the father as the father of the children, awarded the mother custody of the children, awarded the father visitation with the children, and ordered the father to pay child support, a percentage of the children's medical expenses, and a portion of the daughter's theater expenses. The 2021 judgment also ordered the father to pay a child-support arrearage in the amount of $65,000 and to reimburse the mother for expert-witness fees in the amount of $10,000, the guardian ad litem fee, and court costs. Regarding the father's visitation, the 2021 judgment provided in pertinent part:

> "[In 2021, t]he father is granted six (6) visits in the United States each lasting two (2) weeks. During the days, the father is in the United States for his visits, the father shall have visitation with the children after school until 8:00 p.m. or if they are not in school, 10:00 a.m. to 8:00 p.m. The father will give a proper notice of at least [two (2)] weeks before any visit. The father will assist in taking the children to necessary practices or activities while visiting the children."

2

Regarding the father's obligation to pay the daughter's theater expenses, the 2021 judgment provided:

> "[T]he father shall pay an amount up to $1,000 per month to [the mother] for reimbursement or application to any and all fees and costs associated with the daughter's theatrical programs, camps, or plays, in which [the father] had prior knowledge that the child will benefit from participation."

The father appealed 2021 judgment and asked the trial court to stay the judgment pending resolution of the appeal. We take judicial notice of our records and note that on March 31, 2021, the trial court denied the father's motion to stay the 2021 judgment. On December 22, 2022, this court entered a judgment affirming the trial court's 2021 judgment, see Barton v. Moore (No. 2200526, Dec. 22, 2022), ___ So. 3d ___ (Ala. Civ. App. 2022)(table), and, on March 1, 2023, this court issued its certificate of judgment.

While the appeal of the 2021 judgment was pending before this court, the father, on May 21, 2022, filed a petition for rule nisi against the mother, alleging that the mother had violated the visitation provision in the 2021 judgment by interfering with his visitation with the children. On June 22, 2022, the mother filed an answer to the father's petition in which she denied that she had interfered with the father's visitation. On

November 9, 2022, the mother filed a "motion for leave of court to file an amended pleading." The trial court granted the motion, and, on November 10, 2022, the mother filed a counterpetition alleging, in pertinent part, that the father was in contempt for violating the 2021 judgment by failing to pay his child-support arrearage and the other ordered monies. The mother asked the trial court to order the father to pay the amounts owed plus interest. On January 24, 2023, because he had filed an application for rehearing in <u>Barton v. Moore</u>, supra, that remained pending in this court, the father filed a "motion for an order to allow payment to the clerk [of $75,000]" for the child-support arrearage ($65,000) and for the reimbursement of the expert-witness fees ($10,000). On January 25, 2023, the trial court granted the father's motion and the father paid $75,000 to the clerk. On March 17, 2023, the mother filed a "motion for payment of monies due" asking the trial court, because a certificate of judgment had been issued by this court on March 1, 2023, in <u>Barton v. Moore</u>, supra, to direct the clerk to disburse the $75,000, and to order the father to pay her an additional $12,915.82, which consisted of other unpaid monies plus interest.[1] On March 21, 2023, the father filed a

---

[1]The mother detailed the monies owed as follows:

response, objecting to the mother's calculation of interest on certain monies owed.

The trial for contempt was conducted over two days: January 12, 2023, and April 12, 2023. The father testified that the 2021 judgment required him to notify the mother of the dates of his visitation with the children at least two weeks before he exercised his visitation. According to the father, he had abided by this provision and had provided the mother with at least two weeks' notice each time he planned to exercise his visitation. However, the mother, upon being notified, either informed him that the children were unavailable during the proffered dates, attempted to negotiate different visitation dates, or placed conditions upon his visitation. He explained that the mother had responded that she could not confirm that he could exercise his visitation on his proffered dates more than two weeks out because the children's schedules were too uncertain. He stated that the mother had demanded that he provide only

---

a. $65,000 for unpaid child support plus $10,115.63 in interest;
b. $10,000 for expert witness fees plus $1,556.25 in interest;
c. $750 for reimbursement of the guardian ad litem fee plus $120.97 in interest; and
d. $321.20 for reimbursement of court costs plus $51.77 in interest.

two weeks' notice of his visitation dates and this condition increased the cost of his flights and made it difficult for him to schedule his flights and organize his work. Due to the mother's unwillingness to respect his proffered dates, he had missed the first day of his April 2022 visitation, had to acquire a tutor for the son to exercise his June 2022 visitation, and had to engage his attorney to intervene at least three times to facilitate the visitations.

The mother testified that although she had objected to the father's proffered dates and times for visitation, she had ultimately acquiesced to his dates and that the father had been able to exercise all his visitation at his notified times. According to the mother, "[t]here has not been one time that he did not get the visitation that he sent dates for." She admitted, however, that he had missed the first day of his April 2022 visitation. She insisted that it was often "impossible" to change the children's schedules and that changing their schedules to accommodate the father's visitation would often be to the children's detriment. The mother insisted that she was not trying to deny the father his visitation; rather, she was trying to maximize the father's parenting time. The mother conceded that the 2021

6

judgment did not provide either parent with the authority to give the other visitation dates.

Regarding the provision in the 2021 judgment ordering the father to reimburse the mother for the daughter's theater expenses up to $1,000 each month, the father admitted that he had not reimbursed the mother each month since the entry of the 2021 judgment because, he said, he did not know how much he had owed the mother each month. The mother interpreted the phrase "up to $1,000 per month" in theater expenses to mean that the father in any given year would not reimburse her for more than $12,000 in incurred theater expenses. According to the mother, during the "height of competition year," the daughter incurred more than $2,000 per month in theater expenses.

The father testified that when he requested an itemized statement or receipt for the theatrical expenditures each month, the mother objected. The mother admitted that she had not provided the father with the receipts for the daughter's theater expenses that she had incurred each month. She objected to providing the father with a monthly statement and/or receipts because she claimed that the father had been paying those expenses before the entry of the 2021 judgment and that he

knew the daughter's general theater activities and expenses. She insisted that the daughter had not participated in any new theater activities "that [the father] was not already supporting and contributing to." The father disagreed with the mother's belief that he was aware of the monthly theater costs, insisting that although he had an idea about the daughter's participation in monthly theater activities, he had no idea of the cost of each activity. He explained that, before the entry of the 2021 judgment, he had sent the mother a lump-sum amount of monthly child support and the mother paid the daughter's theater expenses, as well as other expenses, from that sum. According to the father, because the mother had never provided him with the details of the theater expenditures, he had no record of the cost of each activity. After the mother voiced her objection to providing the father with receipts each month for the daughter's theater expenses because the 2021 judgment did not expressly require her to do so, the following exchange occurred:

> "[The husband's counsel]: So, what is your problem with providing him a statement? If she has a play, providing him with the cost of registration? Because it says right here. 'Registration, application.' It actually says what some of those costs are.

"[The mother]: I think that if we could just get that cleared up in a more concise way, then I am happy to whatever this court wants me to do.

"[The husband's counsel]: So you don't think that is clear enough?

"[The mother]: I don't think that is clear enough."

The mother stated that she viewed the theater-expense reimbursement award like a child-support award and the father owed her $27,000 in past due theater-expense reimbursement ($1,000 for the past 27 months), plus interest in the amount of $5,066.12.

The father stipulated that, following the entry of the 2021 judgment, he had not paid the ordered the guardian ad litem fee, the expert witness fee, or the child-support arrearage. He maintained that he had not paid the sums because the ordered monies were being reviewed on appeal. The mother asked that the interest be calculated on the past-due awards and that the father be ordered to pay the past-due amounts, plus interest. She admitted that, after the 2021 judgment had been affirmed, the father had reimbursed her for the guardian ad litem fee of $750, but he did not pay interest on that amount. She calculated that interest to be $120.97. She stated that the father also owed her interest in the amount of $14,072.56 on the past-due child-support arrearage and

the expert-witness fee reimbursement. Additionally, the father owed $120.00 to Huntsville Pediatric Associates for past-due healthcare expenses for the children. She stated that she had incurred $8,000 in attorney fees during this contempt litigation and requested an attorney-fee award.

On May 5, 2023, the trial court entered a final judgment. In its judgment the trial court found the mother in contempt for violating the 2021 judgment insofar as she had interfered with the father's visitation. As a sanction, the trial court denied "the mother's request for interest on any alleged unpaid monies by the father" and awarded the father an additional day of visitation of his choosing. The trial court also found the father in contempt for failing to pay his court-ordered portion of healthcare expenses for the children to Huntsville Pediatric Associates and for failing to reimburse the mother for the guardian ad litem fees and the court costs ($321.20) in the earlier paternity action. The trial court ordered that the father could purge himself of contempt by paying Huntsville Pediatric Associates and the mother within 14 days of the date of the judgment.

The trial court denied the mother's claim of contempt regarding the

father's failure to reimburse her for the daughter's theatrical expenses, stating:

"6. With regards to the payment of the … daughter's theatrical expenses, the court finds that the [2021 judgment] in this matter requires the father to pay 'an amount up to $1,000 per month to [the mother] for reimbursement or application to any and all fees and costs associated with the daughter's theatrical programs ….' The court finds that the mother shall present to the father all receipts and evidence of payments of these expenses to the father each month following the month in which they were incurred at which the father shall reimburse the mother within 14 days up to $1,000 of said expenses. In the alternative, the father may simply pay to the mother $1,000 each month for the minor daughter's theatrical programs in lieu of the presentation of receipts and evidence of payments by the mother. For any month the father has not paid at least $1,000 to the mother for theatrical expenses from the entry of the [2021 judgment] through the date of this [judgment], the father is hereby ordered to remit said payments within 14 days of this [judgment.] No interest shall be awarded for any of these payments."

The trial court further provided with regard to the father's future visitation:

"[T]he father shall continue to comply with the provisions of the [2021 judgment] and continue to give the mother [two] weeks' notice prior to the dates he intends to exercise his visitation. The mother shall make every effort to ensure the children are prepared for the father's visitation and she may not dictate the terms or dates of the father's visitation. The parties are ordered to cooperate with one another to help facilitate these visitations and the father is ordered to ensure that the children participate in any scheduled activities during the periods of his visitation. The mother shall advise the

11

father of any scheduled activities during the periods of visitation and will ensure the children have the necessary clothing, supplies, instructions, etc. for same."

Lastly, the trial court denied any and all other claims by the parties.

On May 17, 2023, the father filed a "notice of compliance" that indicated that he had paid the mother the following amounts: $179 for the children's healthcare expenses, which included the $120 owed to Huntsville Pediatric Associates; $3,600 for the guardian ad litem's fee; $312.20 for the court costs; and $28,000 for the daughter's theatrical expenses.

On June 1, 2021, the mother filed a postjudgment motion. In her motion the mother argued, in pertinent part, that the evidence did not support a finding that she was in contempt for violating the provision in the 2021 judgment concerning the father's visitation, that the trial court erred by not awarding her interest on the unpaid monies, and that the trial court improperly modified the 2021 judgment by requiring her to provide receipts each month for the daughter's theatrical expenses and by ordering that she "may not dictate the terms and dates of the father's visitation." On June 8, 2023, the trial court denied the mother's postjudgment motion. On July 7, 2023, the mother filed a notice of appeal.

Because the trial court considered both oral and documentary evidence at the trial of the contempt action, the ore tenus rule applies.

> "'The [ore tenus] rule applies to "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. <u>Born v. Clark</u>, 662 So. 2d 669, 672 (Ala. 1995).' <u>Yeager v. Lucy</u>, 998 So. 2d 460, 463 (Ala. 2008).
>
>> "'The ore tenus rule affords a presumption of correctness to a trial court's findings of fact based on ore tenus evidence, and the judgment based on those findings will not be disturbed unless those findings are clearly erroneous and against the great weight of the evidence. <u>Reed v. Board of Trs. for Alabama State Univ.</u>, 778 So. 2d 791, 795 (Ala. 2000). It is grounded upon the principle that when a trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of the witnesses. <u>Hall v. Mazzone</u>, 486 So. 2d 408, 410 (Ala. 1986). The ore tenus rule does not cloak a trial court's conclusions of law or the application of the law to the facts with a presumption of correctness. <u>Kennedy v. Boles Invs., Inc.</u>, 53 So. 3d 60 (Ala. 2010).'
>
> "<u>Allsopp v. Bolding</u>, 86 So. 3d 952, 958 (Ala. 2011)."

<u>Rhodes v. Rhodes</u>, 317 So. 3d 37, 42 (Ala. Civ. App. 2020).

On appeal the mother contends that the trial court exceeded its discretion by finding her in contempt for violating the 2021 judgment by interfering with the father's visitation.

13

"We first note that this court has a very limited scope of review in a contempt case and must affirm the trial court if there is any legal evidence to support its finding. Uhls v. Uhls, 551 So. 2d 1065 (Ala. Civ. App. 1989)." Norland v. Tanner, 563 So. 2d 1055, 1056 (Ala. Civ. App. 1990). "The issue whether to hold a party in contempt is solely within the discretion of the trial court …." Poh v. Poh, 64 So. 3d 49, 61 (Ala. Civ. App. 2010).

Rule 70A, Ala. R. Civ. P., applies "to all civil or criminal contempt proceedings arising out of civil actions." Rule 70A(a)(2)(D) defines civil contempt as "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." In other words, "[t]he failure to perform an act required by the court for the benefit of an opposing party constitutes civil contempt." Carter v. State ex rel. Bullock Cnty., 393 So. 2d 1368, 1370 (Ala. 1981). Additionally, "[t]he purpose of a civil contempt proceeding is to effectuate compliance with court orders and not to punish the contemnor." Watts v. Watts, 706 So. 2d 749, 751 (Ala. Civ. App. 1997).

The record contains ample evidence supporting the trial court's conclusion that the mother violated the 2021 judgment by interfering with

14

the father's visitation. The 2021 judgment specifically granted the father six visits each lasting two weeks with the children. It further provided that to exercise those visits "[t]he father will give a proper notice of at least two weeks before any visits. The father will assist in taking the children to necessary practices or activities while visiting with the children." Evidence was presented from which the trial court could reasonably conclude that when the father provided the mother with the required notification, the mother dictated when she thought the father should exercise his visitation and attempted to impose a visitation schedule upon the father that met her needs. She also demanded that the father notify her only 14 days ahead of his visitation dates, when the 2021 judgment stated that the father provide "at least," not "only," 14 days' notice. Because of the mother's demands, the father had not been able to exercise his visitation as contemplated in the 2021 judgment. Based on the record before us, we cannot say that the trial court exceeded its discretion in determining that the mother had interfered with the father's visitation and in so doing had failed to comply with the visitation provision in the 2021 judgment.

Next, the mother contends that the trial court exceeded its authority by imposing as a sanction for her acts of contempt the waiver of the interest on the father's child-support arrearage. Whether to impose sanctions after finding a party in contempt is within the trial court's discretion. Norland v. Tanner, 563 So. 2d at 1057. The father concedes that the trial court exceeded its discretion by imposing as a sanction the waiving of the interest on his child-support arrearage. See State ex rel. Pritchett v. Pritchett, 771 So. 2d 1048, 1051 (Ala. Civ. App. 2000)("[A] court having jurisdiction over proceedings to enforce an earlier child-support judgment is 'without authority to "waive" the imposition of statutorily-imposed postjudgment interest' upon such child-support judgments. [State Dep't of Hum. Res. v. R.L.R.,] 743 So. 2d [495,] 499 [(Ala. Civ. App. 1999)]." See also State ex rel. W.M.E. v. G.C., 73 So. 3d 593, 595 (Ala. 2011). Although the trial court may exercise its discretion and impose a sanction on the mother in the amount of the "interest on any alleged unpaid monies by the father," it exceeded its authority by waiving that interest. Therefore, we reverse the trial court's judgment with regard to the sanction imposed for the mother's contempt and remand this cause for the trial court to impose a lawful sanction.

The mother further contends that the trial court exceeded its authority, she says, by modifying the provisions in the 2021 judgment regarding the father's obligation to pay the daughter's theater expenses and the father's visitation.

In Hallman v. Hallman, 802 So. 2d 1095, 1098 (Ala. Civ. App. 2001), this court stated:

> "A trial court has the inherent power to interpret, implement, or enforce its own judgment. Helms v. Helms' Kennels, Inc., 646 So. 2d 1343 (Ala. 1994); Grayson v. Grayson, 628 So. 2d 918 (Ala. Civ. App. 1993). … [I]f a provision in a divorce judgment is ambiguous, the court may interpret or clarify the judgment, and the clarification is not considered a modification of the judgment. Mullins v. Mullins, 770 So. 2d 624 (Ala. Civ. App. 2000)."

Our review of the May 5, 2023, final judgment leads us to the conclusion that the trial court did not modify the provisions in the 2021 judgment regarding the father's obligation to pay the daughter's theater expenses or the father's visitation. Rather, the May 5, 2023 final judgment clarified those provisions. The 2021 judgment ordered the father to reimburse the mother "up to $1,000 per month" for certain theater expenses incurred by the daughter. Contrary to the mother's assertion, that provision does not require the father to pay the mother $1,000 per month for theater expenses; rather, it recognizes that for some

17

months the father's reimbursement obligation may be less than $1,000, but in no month will the father be required to pay more than $1,000 for the daughter's incurred theater expenses. To allow the father to determine the amount of each monthly reimbursement, the trial court clarified the 2021 judgment by requiring that the mother to provide receipts for the theater expenses she incurred during the month to the father. Such a requirement is not a modification of the provision; rather, it is a construction of the provision that removes obstacles to make the provision more workable and enforceable.

Likewise, the trial court clarified the provision in the 2021 judgment regarding the father's visitation. The mother claims that the trial court "appears to place unilateral authority in the hands of the father to dictate visitation." The mother's brief at p. 42. A plain reading of the May 5, 2023, judgment reveals that the trial court merely elucidated the meaning of the 2021 judgment. The 2021 judgment unequivocally stated that the father was to provide the mother with at least two weeks' notice of his visitation. The 2021 judgment does not provide that the mother can deny or dictate when the father exercises his visitation. Consequently, the May 5, 2023, judgment did not modify this provision; rather, it explained that

18

the mother is to "make every effort to ensure the children are prepared for the father's visitation and [remember] that she may not dictate the terms or dates of the father's visitation." Nothing in the May 5, 2023, judgment modifies the visitation provision in the 2021 judgment.

Lastly, the mother contends that the trial court exceeded its discretion by denying her request for an attorney fee.

In Marler v. Lambrianakos, 371 So. 3d 287, 315 (Ala. Civ. App. 2022), this court recognized:

> "[O]ur supreme court has held that the prevailing party in an action alleging civil contempt may recover an award of an attorney fee. Moody v. State ex rel. Payne, 355 So. 2d 1116, 1119 (Ala. 1978); Baker v. Heatherwood Homeowners Ass'n, 587 So. 2d 938, 944 (Ala. 1991). 'Such an award, by its very nature, must be predicated on past action that has caused injury to the party moving for a finding of contempt of court.' Chestang v. Chestang, 769 So. 2d 294, 298 (Ala. 2000)."

We cannot conclude that the trial court exceeded its discretion by refusing to award the mother an attorney fee. The purpose of an attorney-fee award in a civil-contempt proceeding is "to allow a party to be compensated for the injuries sustained as a result of the alleged contemptuous acts." Willis v. Willis, 329 So. 3d 650, 663 (Ala. Civ. App. 2020) (citing Moody v. State ex rel. Payne, 355 So. 2d 1116, 1119 (Ala. 1978)). Here, the trial court found both the mother and the father in

19

contempt for violating its 2021 judgment; therefore, both parties were found to have engaged in contemptuous acts. Further, the trial court could have concluded that an award of an attorney fee to the mother in light of her contemptuous conduct was not appropriate. Accordingly, the mother does not demonstrate that the trial court exceeded its discretion by denying her request for an attorney-fee award.

For the foregoing reasons, we affirm the trial court's judgment insofar as it finds the mother in contempt, reverse the judgment with regard to the ordered sanction, and remand the cause for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards, Fridy, and Lewis, JJ., concur.