Rel: April 24, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2026-0038

————————————————

**Barbara Moore, Vanessa Reed, and Christine Burrell**

**v.**

**State of Alabama ex rel. Mayor Robin Sims, as informant**

**Appeal from Jefferson Circuit Court, Bessemer Division**
**(CV-25-108)**

MENDHEIM, Justice.

Barbara Moore, Vanessa Reed, and Christine Burrell appeal from

a judgment of the Jefferson Circuit Court, Bessemer Division ("the trial

court"), granting a writ of quo warranto and a petition for a permanent injunction filed by Robin Sims, the mayor of the City of Lipscomb, purportedly on behalf of the State of Alabama, that removed Moore, Reed, and Burrell from their offices as members of the Lipscomb City Council due to their failure to meet residency requirements pursuant to statutory law. For the reasons explained below, we conclude that the trial court lacked subject-matter jurisdiction over the action, and, consequently, we reverse and remand.

## I. Facts

According to Moore, she has served as a member of the Lipscomb City Council since 2017, and she has resided in her current residence for more than 20 years. Moore has served as the representative for District 5 on the city council. According to Reed, she has served as a member of the city council since 2020, and she has resided at the same residence during the entire period that she has served on the city council. Reed has served as the representative for District 3 on the city council. According to Burrell, she has served as a member of the city council since 2020, and she has resided in her current residence for over 20 years. Burrell has served as the representative for District 2 on the city council.

Moore, Reed, and Burrell ("the council members") all testified that, in May 2025, the city council considered a redistricting plan proposed by Jefferson County Commissioner Shelia Tyson. Instead of adopting the redistricting plan, the city council approved Resolution No. 2025-15 that expressly stated that "the current boundaries shall remain unchanged until the council receives and reviews the standard number of three redistricting maps as per the customary process or until further information is provided that permits a comprehensive evaluation."

On August 26, 2025, the City of Lipscomb conducted a municipal election. Both Reed and Burrell ran unopposed in the election, so their names did not appear on the ballot for the election. Moore had one opponent, but she received a majority of the votes cast between her and her opponent. According to Barry Stephenson, the chair of the Jefferson County Board of Registrars, the August 2025 municipal election in Lipscomb was held based on the redistricting map that had been proposed by Commissioner Tyson rather than using the previous districting map, under which Moore, Reed, and Burrell lived in the districts they represented on the city council. Despite that discrepancy,

on November 3, 2025, Moore, Reed, and Burrell were sworn into office to continue serving in the districts they previously had been serving.

On December 9, 2025, Sims filed an "Application for Temporary Restraining Order and Permanent Injunction" in the trial court against the council members, a motion that opened by stating:

> "Comes Now, Mayor Robin Sims, on behalf of the State of Alabama and files this action pursuant to Alabama Code Section 6-6-591 to challenge the authority of Barbara Moore, Vanessa Reed, and Christine Burrell to occupy a seat on the Lipscomb City Council due to failure to meet the statutory residency requirements to hold office in the districts in which they are currently seated."

That motion also asserted that the council members "are attempting to make municipal appointments which shall drastically impact the overall safety and well-being of [Lipscomb] and its citizens. Such actions of the [council members] are substantial and the injury to [Sims] as a citizen of the City of Lipscomb is irreparable without immediate relief." In an affidavit attached to the motion, Sims testified that he was "personally aware of all the City's district lines and the home addresses of each of the [council members]" and that he had "personal knowledge that the [council members] do not reside in the districts for which they are currently serving."

4

On the same date, December 9, 2025, the trial court entered a temporary restraining order ("TRO") requiring that the council members "and their agents, servants, employees and those persons in concert or participation with each of them be ... temporarily restrained and enjoined directly and indirectly from taking any action as members of the Lipscomb City Council." The TRO set a "a hearing ... with respect to [Sims's] request for preliminary injunction" for December 18, 2025. The TRO also stated: "[Sims] shall post bond in the amount of $1,500."

The record on appeal shows that, on December 10, 2025, "The Ohio Casualty Insurance Company"[1] posted a bond of $1,500 on behalf of Sims "in consideration of the premises and the issuance of said Temporary Restraining Order."

On December 12, 2025, Sims filed in the trial court a "Complaint for Writ of Quo Warranto," which stated:

> "[The] State of Alabama on relation of Robin Sims, individually and in his capacity as Mayor of the City of Lipscomb as Informant, ... files this action pursuant to Alabama Code Section 6-6-591 to challenge the authority of Barbara Moore, Vanessa Reed, and Christine Burrell to occupy a seat on the Lipscomb City Council due to their failure

---

[1]The Ohio Casualty Insurance Company does business as Liberty Mutual Surety.

5

to meet the statutory residency requirements to hold office in the districts in which they are currently seated."

That complaint alleged that Moore was "currently seated in District 5 of the City of Lipscomb," that Reed was "currently seated in District 3 of the City of Lipscomb," and that Burrell was "currently seated in District 2 of the City of Lipscomb." The complaint further asserted that, "[u]pon review of the city maps which outline the districts for ... each city council member, it has been confirmed that ... the [council members] do not reside in the district for which they are currently seated." The complaint argued that the council members' presence on the city council violated § 11-43-63, Ala. Code 1975, which, in part, provides:

> "[C]andidates for election for a place on the council, where the council has been divided into districts, shall reside within the boundaries of said district (ward) for which he or she seeks election, and shall continue to reside in the district he or she represents so long as he or she remains a member of said council and further that candidates for election to a place on the council shall have resided within the district from which he or she seeks election for a period of 90 days immediately preceding the date of the election."

Sims requested that the trial court issue a writ of quo warranto and "enter an order for [the council members'] immediate removal." The council members were served with the complaint on December 12, 2025.

6

On December 15, 2025, the council members filed a motion to dismiss the complaint in which they contended that the Lipscomb council district lines were not lawfully changed in 2025. They argued that § 11-46-23, Ala. Code 1975,

> "establishes the exclusive and mandatory procedure for changing municipal district boundaries by requiring:
>
> > "i. adoption of an ordinance by the municipal governing body; and
> >
> > "ii. Filing of a certified copy of the ordinance with the judge of probate within five days of adoption."

The council members asserted that the Lipscomb City Council had not adopted an ordinance changing the district lines but instead had done the exact opposite by adopting an ordinance stating that the district lines would remain unchanged. They further argued that the Jefferson County Board of Registrars had acted unlawfully by implementing Commissioner Tyson's redistricting plan. The council members therefore contended that they were elected under the original and operative district map.

On December 18, 2025, the trial court held a hearing concerning Sims's complaint for a writ of quo warranto, his application for a

7

permanent injunction, and the council members' motion to dismiss the complaint. In that hearing, the trial court listened to arguments from the parties' counsel, heard testimony from the council members, from Stephenson, and from Ramona Banks, the Election Officer for the City of Lipscomb, and accepted evidence submitted by the parties. Stephenson testified that the map used for Lipscomb's municipal election was the one based on Commissioner Tyson's redistricting plan. Banks testified that she had handled all candidate-qualification paperwork and that she had submitted candidate-qualification information that reflected the districts in which the incumbent council members were currently serving because she was aware that the city council had rejected Commissioner Tyson's redistricting plan. However, Banks discovered on election day from Stephenson that Lipscomb had been redistricted.

On December 19, 2025, Sims submitted a brief "in response to the Court's direction to establish that [Sims] possesses proper standing to bring the pending action in quo warranto." In his brief, Sims argued that he "has proper standing as informant for the State of Alabama because Alabama Code Section 6-6-591(b) sets forth that an action may be filed

by <u>any person</u> who gives security for costs of the action." Sims further stated:

> "The giving of security for costs of the action is the condition upon which the relator is permitted to sue in the name of the State. <u>Turner v. Ivey</u>, [387 So. 3d 1088, 1094 (Ala. 2023)].

> "Moreover, the giving of security for the costs of the litigation 'is a condition on which the right to proceed in the name of the State is given to individuals.' <u>State ex rel. Radcliff v. Lauten</u>, 256 Ala. 559, 561, 56 So. 2d 106, 107 (1952)."

On December 19, 2025, the trial court entered an order in which it denied the council members' motion to dismiss and concluded that

> "[t]he Defendants Barbara Moore, Vanessa Reed, and Christine Burrell are found to be unlawfully occupying the office of Lipscomb City Council Member for District 2, 5, and 3 respectively due to their failure to meet residency requirements pursuant to Alabama Code Section 11-43-63.

> "3. Accordingly, Lipscomb City Council District seats 2, 3, and 5 are hereby declared Vacant and shall be filled in accordance with Section 11-44G-1 of the Alabama Code."[2]

---

[2]Section 11-44G-1, Ala. Code 1975, provides, in part:

> "(a)(1) A vacancy in the office of city council member in any Class 7 or Class 8 municipality shall be filled by the city council at the next regular meeting or any subsequent meeting of the council. The person elected shall hold office for the unexpired term. In the event a vacancy is not filled within 60 days after it occurs in a Class 7 or Class 8 municipality, each existing city council member, including the mayor, may

On the same date, the trial court entered a separate order granting Sims's application for a permanent injunction. Those orders are collectively referred to as "the judgment."

On January 1, 2026, the council members filed a postjudgment motion to alter, amend, or vacate the trial court's judgment. In their postjudgment motion, the council members reiterated their position that Sims's quo warrant claim "fails as a matter of law because it is predicated on a redistricting map that was never lawfully adopted by ordinance." The council members continued to insist that, "[b]ecause no change in district boundaries occurred as a matter of law, [the council members] cannot be deemed nonresidents of their districts." They argued that "the purported 2025 redistricting map is void <u>ab initio</u>, it has no legal existence, and cannot be used for any purpose, including the evaluation

---

submit a name to the Governor for appointment. If the Governor fails to make an appointment from any submitted names within 90 days after the vacancy occurs, the judge of probate shall call a special election to fill the vacancy.

"....

"(4) In the event more than one vacancy exists in the office of city council member or in the office of mayor, or both, all vacancies shall be filled in the same manner."

10

of [the council members'] residency." The council members also contended, for the first time, that Sims's quo warranto action in substance constituted an election contest that was filed too late because election contests must be filed within five days of the declaration of the election results. See § 11-46-69(b), Ala. Code 1975.[3] In support of their

_____

[3]Section 11-46-69, Ala. Code 1975, provides:

"(a) The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town for any of the following causes:

"(1) Misconduct, fraud, or corruption on the part of any election official, any marker, the municipal governing body, or any other person;

"(2) The person whose election to office is contested was not eligible thereto at the time of such election;

"(3) Illegal votes;

"(4) The rejection of legal votes; or

"(5) Offers to bribe, bribery, intimidation, or other misconduct calculated to prevent a fair, free, and full exercise of the elective franchise.

"(b) Any contest of such an election must be commenced within five days after the result of the election is declared. Such contest shall be instituted in the manner prescribed by Section 17-15-29[, Ala. Code 1975,] and, except as otherwise

motion, the council members attached affidavits from the council members and from Banks attesting to facts concerning the council members' places of residency, the city council's actions with respect to Commissioner Tyson's redistricting proposal, and what occurred on the election day of August 26, 2025.

On January 7, 2026, Sims filed an "Objection to Defendants' Motion to Alter, Amend or Vacate Order" in which he reiterated his position that the council members were seated in districts in which they did not reside. In that response to the council members' postjudgment motion, Sims contended, for the first time, that the council members had "waived any objection to the redistricting map when they failed to file an election contest." Sims contended that the council members "argue that they didn't agree with the redrawing of the [district] lines, however, knowingly failed to take any action to challenge the lines once they discovered they had been redrawn." Additionally, Sims insisted, "[a]ny change in the district lines or a readoption at this juncture would change the outcome

provided in this article [i.e., Title 11, Chapter 46, Article 2, Ala. Code 1975] all proceedings relative to contests of elections to municipal offices shall be governed by the provisions of Articles 2 and 3, Chapter 15, Title 17 of this Code, insofar as they are applicable."

12

for the [council members] as under the current lines they fail to meet the residency requirement, however, under the former lines they could not receive any qualified votes for their previous district." Along similar lines, Sims asserted that "all votes cast were based on the redrawn district lines and any change would disqualify every city council vote cast." Sims also argued that the affidavits the council members submitted along with their postjudgment motion should be "stricken from the record" because the affidavits contained new evidence that was previously available but was not presented. However, Sims also submitted new evidence as attachments to his response, including copies of the statements of candidacy filed by Moore, Reed, and Burrell, along with voter-roll registries from the August 26, 2026, election listing the districts the council members resided in under the redrawn district map.

On January 8, 2026, the trial court held a hearing on the council members' postjudgment motion. In that hearing, the trial court stated:

> "THE COURT: Per that election [on August 26, 2025], it was based on the map that, I think we all agree, was not the appropriate map to be used, or I believe that. Based upon everything that you [counsel for the council members] said, and I will say through no fault of your clients, I don't believe, but I do think that is the map -- the only map that is before the Court at this time. Because you all are here asking me to

13

make a ruling on the results of that election, and that election was based upon that map."

The trial court made several similar statements in the hearing that described the new district map as "the incorrect map," or as containing "a district line that was incorrect," that the trial court did not disagree with the council members' position that the new map "was not lawful," and that "I'm not saying it was properly done. I hope you understand that. I'm saying it was improperly done."

However, the trial court also stated that, after the first hearing,

"I told everyone that this case is about that election on that date, and on that date the map was map number two. So my focus is on map number two. You can't come in now and say it should have been map number one. You should have done that when you all realized that it was the incorrect map that they were voting on.

"....

"... Or within the time period afterwards, you come in and say, 'Judge, this election is void because it was based upon the incorrect map.' I would agree with you, and you could come in the day of the election and say, 'Hey, we understand citizens in this city are voting and they're in the -- the district lines are improper.' I could have done something for you then. And even when we came back, we came to court on November 3rd of 2025, when there was injunction filed or asking me for a permanent injunction to prevent your clients from taking their -- being sworn in and taking their seats.

14

"You argued then and I agreed with you, that that was an election contest and the time to bring that had passed. I did not have jurisdiction to deal with that. I denied their injunction. I allowed your -- your clients to be sworn in. I told everyone at that hearing, if you all do not get this straight, you all have a problem. And I think everybody understood that because the law says -- it's set out in the response that [Sims's counsel] set out -- that you have to continue to reside in the district you are elected to.

"Based upon that election, they were elected to those particular districts that they're -- they are the numbers that they are. The allegations for the last thing that Mr. Sims brings is that they are not continuing to reside in that district."

Also in the hearing, counsel for Sims repeatedly stated that what was before the trial court was the quo warranto action, not an election contest. The trial court agreed, stating: "[T]his is not an election contest because [Sims is] not contesting the election. [He is] contesting now [the council members'] qualifications to remain as councilmen in their districts."

On January 8, 2026, the trial court entered an order denying the council members' postjudgment motion. On January 12, 2026, the council members filed a motion requesting that the trial court set an appeal bond and stay enforcement of the judgment pending the appeal. In that motion, the council members contended that, absent a stay pending

15

appeal, the council members would "suffer immediate and irreparable harm, including loss of elected office, disenfranchisement of voters, and permanent disruption of municipal governance." They asserted that the trial court's judgment had caused a lack of a quorum on the city council, rendering the city council "incapable of conducting lawful municipal business." They also contended that if appointments to their seats were made during the pendency of the appeal, "the harm to [the council members] will be permanent and irreparable regardless of the outcome of appellate review."

On January 12, 2026, the trial court entered an order setting an appeal bond of $1,500. However, the trial court denied the council members' motion to stay enforcement of the judgment pending their appeal.

On January 22, 2026, the council members filed their notice of appeal. On January 27, 2026, the council members filed in this Court a motion to stay the enforcement of the trial court's judgment until the determination of this appeal that repeated the arguments in support of a stay that they had asserted to the trial court. As part of their motion to stay, the council members raised, for the first time, the allegation that

16

"[t]he judgment under review arises from proceedings containing jurisdictional defects and fundamental procedural irregularities including the absence of the statutorily required quo warranto bond and filing fee and the enforcement of an inoperative injunction." In a memorandum of law attached to their motion, the council members expounded on that allegation, arguing that "[t]he trial court lacked subject matter jurisdiction because [Sims] failed to post the statutorily required quo warranto bond and failed to pay the required filing fee for the complaint for writ of quo warranto." On the same date, the council members also filed with this Court a motion to expedite the appeal and for an accelerated briefing schedule.

On January 28, 2026, Sims filed in this Court a pro se response to the council members' motion for a stay in which Sims asserted that his complaint for a writ of quo warranto was actually filed on December 9, 2025:

"1. As is customary, the complaint and application for temporary restraining order and preliminary injunction were filed contemporaneously on December 9, 2025, in person. At the time of filing the complaint, the staffer assigned to filing in complaints was temporarily out of the office and was not expected back later that week. Consequently, another office employee received the filing and forwarded it to the assigned

17

staffer for scan and input upon her return. It was later discovered by the assigned staffer that the corresponding complaint was missing from the scanned documents and she was unable to locate the original copy of the complaint. It was then requested by the clerk that a copy of the complaint be filed electronically to add to the record. Subsequently, the complete filing to include the complaint was served upon [the council members] which is not in dispute to which they in response filed a motion to dismiss. Should additional verification be required, an affidavit of the clerk may be obtained.

"2. On December 9, 2025, at 11:48 am, a filing fee of $354.00 was paid for the filing of the complaint and adjoining application for Temporary Restraining Order and Preliminary Injunction (Please see attached receipt).

"3. The required bond as ordered by the Court was secured and posted as reflected in Document (7) of the Court record as attached."

On February 5, 2026, this Court granted the council members' motion to stay enforcement of the trial court's judgment pending the determination of this appeal. On February 9, 2026, the Clerk of the Supreme Court granted the council members' motion to expedite the appeal and for an accelerated briefing schedule.

On February 24, 2026, Sims's trial counsel filed in the trial court a motion to supplement the record on appeal with what Sims asserted to be his original "Complaint for Writ of Quo Warranto." That motion

18

essentially asserted the same facts alleged by Sims in his January 28, 2026, pro se response to the council members' motion for a stay, i.e., that Sims actually filed his "Complaint for a Writ of Quo Warranto" on December 9, 2025, along with his "Application for Temporary Restraining Order and Permanent Injunction." Sims attributed the fact that the record on appeal shows his "Complaint for Writ of Quo Warranto" to have been filed on December 12, 2025, to a clerical error by the Jefferson Circuit Clerk's office. On the same date, February 24, 2026, the trial court granted Sims's motion to supplement the record.

On February 25, 2026, the council members filed with this Court what they styled an "Emergency Notice of Post-Appeal Record Modification and Motion to Strike or, in the alternative, Motion for Supervision of Record Correction." In that motion, the council members asserted that Sims

> "has utilized the trial court to improperly and retroactively alter the jurisdictional facts of the record on appeal while the merits of that exact jurisdictional issue are actively pending before this Court. Furthermore, the trial court entered an order materially altering the record entirely <u>ex parte</u>, without proper service and without affording [the council members] any opportunity to be heard."

19

The council members requested that this Court either strike the supplement to the record as void or "assume direct supervision over any correction or supplementation of the record pursuant to Rule 10(f), Ala. R. App. P.," and "[c]larify that the supplementation order does not affect this Court's independent determination of subject-matter jurisdiction."

## II. Standard of Review

The council members challenge the trial court's judgment granting the writ of quo warranto and declaring the council members' seats on the city council vacant. They also appeal the trial court's January 8, 2026, order denying their postjudgment motion. The trial court's decision to grant the writ of quo warranto was based on evidence presented in the December 18, 2025, hearing that included live testimony from the council members, Stephenson, and Banks.

> "'Because the trial court heard "live" testimony at the hearing it conducted in this case, we review its findings of fact under the ore tenus standard of review. "'Under the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence.'" Ex parte Baron Servs., Inc., 874 So. 2d 545, 548 (Ala. 2003) (quoting Ex parte Cater, 772 So. 2d 1117, 1119 (Ala. 2000)). "[T]he ore tenus rule does not extend to cloak a trial judge's conclusions of law ... with a presumption of correctness." Baron, 874 So. 2d at 549 (quoting Eubanks v. Hale, 752 So. 2d 1113, 1144-45

20

(Ala. 1999)). Therefore, we review all legal issues in this appeal de novo. Brown v. Board of Educ. of Montgomery County, 863 So. 2d 73, 75 (Ala. 2003).'"

Water Works & Sewer Bd. of Prichard v. Synovus Bank, 404 So. 3d 202, 205 (Ala. 2024) (quoting Eagerton v. Second Econ. Dev. Coop. Dist., 909 So. 2d 783, 788 (Ala. 2005)).

## III. Analysis

As the latter portion of the rendition of facts indicates, the primary focus of this appeal by the council members is not the reasoning relied upon by the trial court in issuing the writ of quo warranto. Instead, the appeal centers on whether Sims fulfilled a jurisdictional prerequisite for bringing a quo warranto action. Section 6-6-591, Ala. Code 1975, provides:

"(a) An action may be commenced in the name of the state against the party offending in the following cases:

"(1) When any person usurps, intrudes into or unlawfully holds or exercises any public office, civil or military, any franchise, any profession requiring a license, certificate, or other legal authorization within this state or any office in a corporation created by the authority of this state;

"(2) When any public officer, civil or military, has done or suffered any act by which, under the law, he forfeits his office; or

21

"(3) When any association, or number of persons, acts within this state as a corporation without being duly incorporated.

"(b) The judge of the circuit court may direct the action to be commenced when he believes that any of the acts specified in subsection (a) of this section can be proved and it is necessary for the public good, or <u>it may be commenced without the direction of such judge on the information of any person giving security for the costs of the action</u>, to be approved by the clerk of the court in which the action is brought.

"(c) An action under this section must be commenced in the circuit court of the county in which the acts are done or suffered or, if to try the right to a corporate office, in the circuit court of the county in which the corporation has its principal office or, if it has no principal office, in any county in which it does business."

(Emphasis added.)

Summarizing § 6-6-591, this Court has stated:

"Under the plain meaning of § 6-6-591, there are only two alternative methods for commencing a quo warranto action: (1) at the direction of a circuit-court judge or (2) without the direction of a circuit-court judge on the information of any person giving security for the costs of the action. No other permissible methods for commencing a quo warranto action are provided by the statute."

<u>Douglas v. Griggers</u>, 401 So. 3d 288, 291 (Ala. 2024).

"'"The giving of security for the costs of the action is the condition upon which the relator is permitted to sue in the name of the State. Without such security, he usurps the authority of the State."' Riley[ v. Hughes], 17 So. 3d [643,] 646 [(Ala. 2009)] (quoting Birmingham Bar Ass'n v. Phillips & Marsh, 239 Ala. 650, 657, 196 So. 725, 732 (1940)).

"'[Section] 6-6-591(b) provides that the action "may be commenced ... on the information of any person giving security for the costs of the action, to be approved by the clerk of the court in which the action is brought."

"'The giving of security for the costs of the litigation "is a condition on which the right to proceed in the name of the State is given to individuals." State ex rel. Radcliff v. Lauten, 256 Ala. 559, 561, 56 So. 2d 106, 107 (1952). Otherwise stated, it "is a condition precedent to the jurisdiction of the court." Id., 56 So. 2d at 106-07. See Wenzel v. State ex rel. Powell, 241 Ala. 406, 407, 3 So. 2d 26, 26 (1941) ("failure to give security for costs in such proceedings ... is jurisdictional and fatal to the proceedings"). "Without [the giving of] such security, [the relator] usurps the authority of the State." Birmingham Bar Ass'n v. Phillips & Marsh, 239 Ala. 650, 657-58, 196 So. 725, 732 (1940); see also Evans v. State ex rel. Sanford, 215 Ala. 61, 109 So. 357 (1926).'

"Brannan[ v. Smith], 784 So. 2d [293,] 296-97 [(Ala. 2000)]. The absence of such security deprives the circuit court of subject-matter jurisdiction over a quo warranto action. See Riley, 17 So. 3d at 648-49 ('Because of the unavailability of a remedy by declaratory judgment and the absence of security

23

> for costs if the action is treated as one for quo warranto, the trial court did not have subject-matter jurisdiction.' (emphasis added))."

Burkes v. Franklin, 370 So. 3d 235, 240-41 (Ala. 2022) (second emphasis added). See, e.g., Riley v. Hughes, 17 So. 3d 643, 648 (Ala. 2009) ("The absence of such security is a jurisdictional defect."); State ex rel. Radcliff v. Lauten, 256 Ala. 559, 561, 56 So. 2d 106, 106-07 (1952) ("Such security for costs must be given before the commencement of the suit and is a condition precedent to the jurisdiction of the court.").

The council members contend that Sims did not give security for the costs of the quo warranto action and that the failure to do so deprived the trial court of subject-matter jurisdiction over the action. Sims did not file an appellee's brief, and, thus, has not directly refuted the council members' contention. Instead, Sims appears to have indirectly disputed the council members' argument through his pro se response to the council members' motion for a stay and his trial counsel's subsequent motion to supplement the record. As the rendition of the facts details, those filings asserted that Sims filed his "Complaint for Writ of Quo Warranto" on December 9, 2025, but that a clerical error caused the record to reflect that it was not filed until December 12, 2025.

24

In their "Emergency Notice of Post-Appeal Record Modification and Motion to Strike or, in the alternative, Motion for Supervision of Record Correction," the council members strenuously disagree with Sims's supplement to the record on appeal. They correctly point out that the version of the "Complaint for Writ of Quo Warranto" in the supplemental record differs from the version in the original record: the two documents have different case numbers attributed to them, the version in the original record states that Sims filed it "individually and in his capacity as Mayor of the City of Lipscomb as Informant" while the version in the supplemental record states that Sims filed it "as Informant for the State of Alabama," and there is at least one other minor discrepancy in the language between the two documents. The council members further observe that the "December 9, 2025," filing date on the complaint in the supplemental record is handwritten, not electronically stamped as is the filing date for all other submissions contained in the record on appeal.

Sims has not offered any explanation for the discrepancies between the two copies of the complaint. Moreover, the version of the complaint that is in the original record is the same version that was served on the

council members. Thus, there are reasons to doubt the authenticity of the document Sims submitted to the trial court to supplement the record.

However, it also appears, based on the introductory language of Sims's "Application for Temporary Restraining Order and Permanent Injunction," that Sims intended to file his application for a TRO and a permanent injunction and his "Complaint for Writ of Quo Warranto" simultaneously. As we related in the rendition of facts, Sims's application for a TRO and a permanent injunction began by stating that Sims "files this action pursuant to Alabama Code Section 6-6-591." Thus, it seems that Sims intended his motion seeking a TRO and a permanent injunction to accompany his complaint for a writ of quo warranto.

Even if we assume that Sims did file his quo warranto complaint at the same time he filed his application for a TRO and a permanent injunction, we are left to wonder why that matters because Sims never directly tells us that fact's alleged ramifications. Instead, we are left with a hint of Sims's apparent argument in his pro se response to the council members' motion for a stay in which he stated: "The required bond as ordered by the [trial] Court was secured and posted as reflected in

26

Document (7) of the Court record as attached."[4] The document to which

Sims referred was the surety paperwork from The Ohio Casualty

Insurance Company indicating the payment of $1,500 for the bond the

trial court required Sims to pay for the imposition of the TRO. In short,

Sims apparently believes that the bond required and paid for the

imposition of the TRO also served as the security for the costs of the quo

warranto action.

---

[4]As the rendition of facts also details, Sims also stated in his pro se response to the motion for a stay that he paid a filing fee for the complaint and the application for a TRO and a permanent injunction, and he attached evidence of that payment to his response. So, it appears that part of the reason Sims argues that he filed his quo warranto complaint simultaneously with his application for a TRO and a permanent injunction is to demonstrate that he did pay a filing fee for his action. Of course,

> "[a]ppellate courts are not permitted to consider matters outside the record. See, e.g., Etherton v. City of Homewood, 700 So. 2d 1374, 1378 (Ala. 1997). '""[A]ttachments to briefs are not considered part of the record and therefore cannot be considered on appeal.'"' Roberts v. NASCO Equip. Co., 986 So. 2d 379, 385 (Ala. 2007) (quoting Morrow v. State, 928 So. 2d 315, 320 n.5 (Ala. Crim. App. 2004), quoting in turn Huff v. State, 596 So. 2d 16, 19 (Ala. Crim. App. 1991))."

Ex parte Ruggs, 10 So. 3d 7, 10 n.2 (Ala. 2008). However, because we decide this appeal based on the issue whether security was given for commencement of the quo warranto action, we see no need to decide whether Sims needed to pay a separate filing fee for his quo warranto complaint.

Guessing that the foregoing might have been Sims's answer to the council members' challenge that Sims did not give security for the costs of filing the quo warranto action, the council members provide a retort in their appellants' brief:

"Although the trial court ordered a $1,500 bond in connection with the preliminary injunction, no separate bond was ordered, approved, or filed for the quo warranto action filed on December 12, 2025. ... The Rule 65(c), Ala R. Civ. P., bond does not satisfy § 6-6-591(b)[, Ala. Code 1975,] because it was imposed solely as a condition of injunctive relief and not as security for costs in the quo warranto proceeding. The statutory requirement applies at the institution of the quo warranto action itself. Without the posting of a separate security for the quo warranto claim, the action is never properly commenced, and the circuit court never acquires jurisdiction. See Evans v. State ex rel. Sanford, 215 Ala. 61, 62[, 109 So. 357, 357] (1926) (holding that a 'failure to give the [required] security at the institution of [a quo warranto] proceeding[] is fatal.') This rule controls here and renders the judgment void."

Council members' brief, pp. 20-21.

As the council members observe, Rule 65(c), Ala. R. Civ. P., generally requires that security be given for the issuance of an injunction.

"Rule 65(c), Ala. R. Civ. P., provides:

"'No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems

28

proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, however, no such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases.'

"This Court noted in Spinks v. Automation Personnel Services, Inc., 49 So. 3d 186, 190 (Ala. 2010), that '"'there are ... necessary exceptions to such an absolute holding ... under Rule 65(c) [that security must be given before a preliminary injunction can issue], such as requiring only a nominal security, or where the litigant is impecunious or the issue is one of overriding public concern.'"' (Quoting Anders v. Fowler, 423 So. 2d 838, 840 (Ala. 1982), quoting in turn Lightsey v. Kensington Mortg. & Fin. Corp., 294 Ala. 281, 285, 315 So. 2d 431, 434 (1975).) However, this Court went on to state:

"'Alabama law ... clearly provides that "[i]t is mandatory that security be given under Rule 65(c), 'unless the trial court makes a specific finding based upon competent evidence that one or more of the exceptions ... do exist.'" Anders, 423 So. 2d at 840 (quoting Lightsey, 294 Ala. at 285, 315 So. 2d at 434) (emphasis [on "mandatory"] added)....

"'....'

"Spinks, 49 So. 3d at 191 (quoting Anders, 423 So. 2d at 840)."

City of Gadsden v. Boman, 143 So. 3d 695, 706-07 (Ala. 2013) (emphasis other than on "mandatory" added).

It is apparent from the foregoing that, although the initiation of a quo warranto action by an informant and the issuance of an injunction (absent certain exceptions) require posting security,[5] the two requirements stem from separate legal bases. The requirement for security at the commencement of a quo warranto action arises from § 6-6-591(b); the requirement of an injunction bond for the issuance of an injunction arises from Rule 65(c), Ala. R. Civ. P.

Moreover, the consequences of a failure to provide security in the two situations are markedly different. A trial court's failure to require a movant to give security for costs when issuing an injunction may result in the reversal of the order imposing the injunction. See, e.g., Milton v. Haywood, 393 So. 3d 1156 (Ala. 2023); Spinks v. Automation Pers. Servs., Inc., 49 So. 3d 186 (Ala. 2010). However, as we already have mentioned, the failure to provide security at the commencement of a quo warranto

_____

[5]See Milton v. Haywood, 393 So. 3d 1156, 1158 and n.4 (Ala. 2023) (listing exceptions to the security requirement for injunctions).

action deprives the trial court of subject-matter jurisdiction over the action.

Additionally, nothing in the language of § 6-6-591 indicates that if an injunction happens to be included as a remedy in a quo warranto action, then security for the injunction may serve as security for the quo warranto action. Indeed, it would not make sense for § 6-6-591 to include such a proviso given that the statute requires security to be provided at the commencement of the action, whereas injunctions are imposed at varying points in litigation. The fact that a TRO was granted at the outset of this action does not change the overarching point that giving security for a quo warranto action is a stand-alone requirement for such an action if it is brought by a relator in the name of the State, as it was in this case. As we already have noted, "'[t]he giving of security for the costs of the action is the condition upon which the relator is permitted to sue in the name of the State. Without such security, he usurps the authority of the State.'" Riley, 17 So. 3d at 646 (quoting Birmingham Bar Ass'n, 239 Ala. at 657, 196 So. at 732).

In this case, the $1,500 bond required by the trial court clearly was imposed in relation to the TRO. The trial court imposed the bond in its

order granting the TRO, and the surety paperwork clearly states that the payment was made "in consideration of the premises and the issuance of said Temporary Restraining Order." Conversely, there is no indication in the record on appeal that the trial court required Sims to pay security for the initiation of the quo warranto action or that Sims made any such payment. "The absence of such security deprives the circuit court of subject-matter jurisdiction over a quo warranto action." Burkes, 370 So. 2d at 241. Without subject-matter jurisdiction, the trial court lacked the authority to enter its judgment ordering that the council members' seats were vacant and that the seats be filled in accordance with § 11-44G-1, Ala. Code 1975.

## IV. Conclusion

Because the trial court lacked subject-matter jurisdiction over this action, its judgment is void. "Therefore, the trial court's judgment is reversed, and this cause is remanded with instructions for the trial court to enter an order vacating its judgment." Douglas, 401 So. 3d at 297.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Stewart, C.J., and Shaw, Wise, Sellers, Cook, McCool, and Parker, JJ., concur.